Dahne W. Winebrenner v. Commissioner.
Dahne v. Commissioner
Docket No. 4861.
United States Tax Court
1947 Tax Ct. Memo LEXIS 21; 6 T.C.M. (CCH) 1315; T.C.M. (RIA) 47324; December 12, 1947
*21 Ira B. Burns, Esq., 1020 Bryant Bldg., Kansas City, Mo., for the petitioner. Harlow B. King, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion TYSON, Judge: This proceeding involves income tax deficiencies and fraud penalties determined by respondent against the petitioner for the calandar years and in the amounts as follows: Year
Deficiency
Fraud Penalty
1941
$ 514.09
$ 382.52
1942
5,823.34
2,911.67
The issues presented by the pleadings are whether respondent erred: (1) In including in petitioner's income for 1941 the amount of $2,609.31 as additional unreported compensation received by petitioner in that year from the Baker-Lockwood Manufacturing Company; (2) in disallowing $153.61 of the total amount claimed by petitioner as a deduction for taxes paid in 1941; (3) in disallowing a claimed deduction of $560.04 for automobile expenses for 1941; (4) in determining a 50 per cent fraud penalty for 1941; (5) in including in income for 1942 the amount of $50 as additional unreported compensation received by petitioner in that year from the Jackson Tube Company; (6) in including in income for 1942 the amount of $1,656.64 *22 as additional unreported compensation received by petitioner in that year from Ohio Tubular Products Company; (7) in including in income for 1942 the amount of $575 as additional unreported compensation received by petitioner in that year from the Ohio Tubular Products Company through its president, H. A. Tyson; (8) in including in income for 1942 the amount of $4,647.62 as additional unreported compensation received by petitioner in that year from Baker-Lockwood Manufacturing Company; (9) in disallowing a claimed deduction of $1,598.36 for traveling expenses for 1942; and (10) in determining a 50 per cent fraud penalty for the year 1942. This proceeding also involves a claim for refund of $401.40 for the year 1941 on account of an alleged overpayment of petitioner's income tax for that year. As to the question of fraud penalties respondent affirmatively alleges that the deficiencies involved for each of the years 1941 and 1942 are due in whole or in part to the filing of false and fraudulent returns with the intent to evade tax. He alleges that with willful intent to evade income tax, the petitioner in March 1942 filed a 1941 return in his own name with the collector of internal *23 revenue for the sixth district of Missouri, which return understated his taxable income and tax liability thereon by omitting certain amounts received as compensation for services, by deducting certain expenses for which he had received reimbursements not reported on such return, and by claiming a $1,500 personal exemption as "Married and living with husband or wife" when he was not living with his wife, and, further, that petitioner in March 1942 filed with the collector of internal revenue at Cincinnati, Ohio a document purporting to be a 1941 return of one, Murray Bailey, in which a portion of petitioner's income was reported and a personal exemption of $750 was claimed. As to the calendar year 1942 respondent alleges that with willful intent to evade income tax the petitioner filed in April 1943 with the collector of internal revenue for the eleventh district of Ohio his 1942 return which understated his taxable income and tax liability thereon by omitting certain amounts received as compensation for services and by deducting certain expenses for which he had received reimbursements not reported on such return. In the alternative, respondent alleges that by reason of the premises *24 the deficiencies involved for the years 1941 and 1942 are due in whole or in part to negligence or intentional disregard of rules and regulations but without intent to defraud and that appropriate penalties are due. Petitioner concedes that, for the year 1941, respondent correctly determined that petitioner made an error of $100 in subtracting deductions from income on his original return filed in his own name for that year. Respondent, on brief, concedes error in increasing petitioner's income for 1941, as reported on his original return in his own name, by the amount of $400 as additional compensation received from the Ohio Tubular Products Company. This item has no connection with the items of $1,656.64 and $575 mentioned above. Respondent, on brief, concedes partial error with respect to the seventh issue, namely, the inclusion in income for 1942 of an amount in excess of $500 as additional income received from H. A. Tyson. Petitioner concedes, with respect to the eighth issue, that of the amount of $4,647.62 included in his income by respondent for the year 1942 as additional compensation, the sum of $4,394.77 was properly so included. General Findings of Fact The *25 petitioner, an individual, resided at Kansas City, Missouri prior to and during the year 1941, and during 1942 he resided at Galloway, Ohio, which is also his present place of residence. For the calendar year 1941 petitioner, on March 16, 1942, filed his original income tax return, made in his own proper name, with the collector of internal revenue at Kansas City in the sixth district of Missouri, and at that time paid $67.39, or one quarter, of the taxes shown thereon to be due. For the same year he also filed, in March 1942, another income tax return with the collector of internal revenue at Dayton in the first district of Ohio, under the fictitious name of Murray Bailey, and at that time paid the full amount of $158.04 of the tax shown thereon to be due. Thereafter, on December 19, 1942, petitioner filed with the collector for the sixth district of Missouri an amended return for the calendar year 1941, made in his own name, and purporting to combine the income theretofore reported on his own original return and the return filed in the name of Murray Bailey, and at that time paid $175.87 of the amount of tax shown thereon to be due. For the calendar year 1942 petitioner filed, on *26 April 28, 1943, his income tax return with the collector of internal revenue at Columbus in the eleventh district of Ohio, the town of Galloway being in that district. The petitioner's returns were made and filed on the cash receipts and disbursements basis. On July 19, 1943, petitioner filed a claim for refund of the amount of $401.40 therein alleged to have been overpaid for the year 1941. During 1941 and 1942 petitioner was employed by the Baker-Lockwood Manufacturing Company, Inc., of Kansas City, Missouri (hereinafter referred to as Baker-Lockwood) as its general sales manager, on the basis of a monthly salary plus bonuses at various times and expenses incurred in company business, except automobile expenses incurred in the Kansas City area. That company was a manufacturer and jobber of canvas goods and fabrics. Petitioner's duties embraced supervision of the company's sales department, locating sources of supply of scarce materials, and also some purchasing of materials. He made direct sales by personally calling on customers and prospective customers in the greater Kansas City area and he supervised the sales in other territories made through other salesmen. Such work required *27 the use of petitioner's personal car. Until some time in September of 1941 petitioner worked out of Baker-Lockwood's Kansas City office, but during the balance of that year was located in or near Dayton, Ohio where he was engaged in obtaining contracts for Baker-Lockwood's products in connection with the expansion program of the Army Air Force at Wright Field. That work also required the use of petitioner's personal car. During 1941 petitioner was a full time employee of Baker-Lockwood and during 1942 the latter agreed that he could represent other concerns on a temporary part time basis on the condition that such work did not interfere with petitioner's duties with Baker-Lockwood. The foregoing facts pertain to more than one issue. Hereinafter we will make a findings of fact as to each issue together with our opinion thereon. First and Eighth Issues Findings of Fact During the latter part of 1941, while petitioner was working at Dayton, Ohio and after he had obtained for Baker-Lockwood a subcontract from Universal Building Products Corporation (hereinafter referred to as Universal), to supply canvas for the Air Force's portable maintenance shelters constructed of tubular metal *28 framework covered with canvas, the petitioner represented to Baker-Lockwood that he required the services of one, Murray Bailey, as a consulting engineer to advise him on matters of design, etc. in connection with the Universal contract. During the latter part of 1941 the petitioner, in the name of Murray Bailey, rendered engineering bills to Baker-Lockwood which paid them by checks made payable to Murray Bailey. Those checks were mailed by Baker-Lockwood to a post office box in the name of Murray Bailey and rented by petitioner who received the checks for his own use and either deposited them in a bank in Columbus, Ohio in an account in the name of Murray Bailey or cashed them. The money so paid by Baker-Lockwood in the name of Murray Bailey was paid by it as compensation for consulting engineer services rendered in connection with the conduct of its business, which services consisted of securing the approval of the prime contractor, Universal, and of the Engineering Division of the Air Corps for various deviations from and changes in contract specifications. The engineering services so rendered by petitioner, under the fictitious name of Murray Bailey, were in addition to those *29 which he performed or was required to perform under his regular contract of employment by Baker-Lockwood. During 1941 and on account of the above-mentioned additional engineering services rendered to Baker-Lockwood by petitioner, the latter received compensation therefor in the total amount of $2,609.31 in addition to his regular compensation from that company. On the 1941 income tax return made and filed by petitioner with the collector at Dayton, Ohio, under the name of Murray Bailey, the petitioner reported as gross income the amount of $2,609.31 above-mentioned, claimed deductions of $25 for contributions and $156.85 for taxes, claimed a personal exemption of $750 as "single, or married and not living with husband or wife," claimed an earned income credit of $242.75, and reported a tax liability of $158.04, which was paid. At the time that return was filed petitioner knew it was false as to the name of Murray Bailey and also as to the claimed deductions which merely constituted amounts arbitrarily ascribed to Murray Bailey. On the original 1941 income tax return made and filed by petitioner with the collector at Kansas City, Missouri, under his own proper name, petitioner *30 reported gross income of $6,390 which did not include the above-mentioned amount of $2,609.31 received under the name of Murray Bailey, and claimed various deductions totaling $1,716.55. He also claimed a personal exemption of $1,500 although he was not living with his wife during 1941, a credit of $400 for a dependant mother, and an earned income credit of $457.34, and reported a tax liability of $269.56, which was paid. At the time that return was filed petitioner knew it was false in that he purposely omitted reporting the amount of $2,609.31 received under the name of Murray Bailey during 1941 and at the time regarded by him as his income and in that he purposely claimed the personal exemption of $1,500 as "Married and living with husband or wife" when he was actually separated from and not living with his wife during 1941. In determining petitioner's liability for the year 1941, on the basis of his original return filed in his own name for that year, respondent increased petitioner's reported income by the amount of $2,609.31 as "additional salary." For the year 1942 the respondent determined that petitioner received from Baker-Lockwood the amount of $4,647.62 as additional *31 compensation under the fictitious name of Murray Bailey and which amount was omitted from his reported gross income on that year's tax return. During the year 1942 petitioner continued the practice of billing that company for engineering services and received payments totaling $4,647.62 under the name of Murray Bailey in the same manner as above set forth in the findings with respect to the year 1941. Petitioner did not include such amount in gross income as reported on his 1942 return. In the latter part of December 1942 petitioner told an officer of Baker-Lockwood about his receipt of all of the payments which that company had made during 1941 and 1942 in the name of Murray Bailey in the total amount of $7,256.93 for both years. At that time and by agreement between petitioner and Baker-Lockwood that certain amounts then due him from the company would be credited against the Murray Bailey payments received by petitioner, the latter's account on the books of Baker-Lockwood was debited with the sum of $7,256.93 paid to Murray Bailey and credited with the sum of $2,584.19 representing amounts then due but withheld from petitioner. Those debits and credits together with prior regular *32 credits and debits left a debit balance of $6,893.75 in petitioner's account at that time. Petitioner left Baker-Lockwood's employ in January 1943 and at that time he was requested to pay such debit balance, but no settlement was made because petitioner made a claim against Baker-Lockwood for salary in the amount of $18,000. The matter was negotiated over a period of time and finally settled in 1944 by Baker-Lockwood giving petitioner a credit of $10,393.75 on his salary claim which was applied to petitioner's debit balance of $6,893.75, and the balance, or $3,500, was paid to petitioner. Petitioner concedes (in view of the above-mentioned settlement with Baker-Lockwood) that of the amount of $4,647.62 received in 1942 under the name of Murray Bailey the sum of $4,394.77 was properly included in gross income for the year 1942. The amount of $4,647.62 paid out by Baker-Lockwood during 1942 to petitioner under the name of Murray Bailey was paid for engineering services rendered by petitioner in addition to the services rendered by him under his regular employment by that company, and the petitioner received such amount as additional compensation for services rendered. Opinion *33 The first issue as to the year 1941 and the eighth issue as to the year 1942, involving petitioner's receipt of payments in those years under the name of Murray Bailey, may as well be discussed together, for the facts and conclusions are alike. The facts are clear that although Murray Bailey was a ficticious name and in using it petitioner was deceiving his employer, nevertheless, petitioner did render and Baker-Lockwood did pay compensation for services consisting of securing approval of the prime contractor, Universal, and of the Engineering Division of the Air Corps for various deviations from and changes in certain contract specifications in connection with the business of Baker-Lockwood. Those payments in the amounts of $2,609.31 for 1941 and $4,647.62 for 1942 constituted compensation for services and taxable income when received in those years, respectively, by petitioner, who was on a cash basis. Petitioner testified that he regarded those payments as income received by him. His further testimony to the effect that he could have rendered the extra services in the course of his regular employment and without extra compensation does not change the factual picture here presented. *34 Furthermore, in our opinion, the subsequent settlement of Baker-Lockwood's asserted claim against petitioner for his debit balance on its books and petitioner's asserted claim against Baker-Lockwood for additional salary due after he left its employ in January 1943 does not change the fact that the amounts here in question were paid by Baker-Lockwood in 1941 and 1942 as compensation for services rendered in those years and received by the petitioner who rendered the services. , relied on by petitioner, is distinguishable, among other respects, in that there there was obviously never any possible claim of right on the part of the taxpayer to the money he had embezzled, while here the services actually performed by petitioner under the name of Murray Bailey and for which the petitioner received the disputed amounts were services performed in addition to those which petitioner was obligated to perform under his regular contract with Baker-Lockwood; and having so actually performed such additional services petitioner had a claim of right to the compensation therefor, notwithstanding that payments thereof were made by petitioner and received *35 by him under the fictitious name of Murray Bailey. The respondent did not err in including in petitioner's taxable income as additional compensation the amounts of $2,609.31 for 1941 and $4,647.62 for 1942. Second Issue Findings of Fact On his original return filed in his own name for 1941, petitioner claimed a deduction of $599.40 as taxes paid, and the respondent disallowed $153.61 thereof. Such claimed deduction for taxes was excessive by the total amount of $109.27, as conceded by petitioner, and respondent concedes that the difference between the above amounts of $153.61 and $109.27, or the sum of $44.34 was erroneously disallowed as a deduction in his determination. Opinion The result of the concessions above set forth is that petitioner is entitled to a deduction for 1941 of $490.13 for taxes paid, and effect thereto will be given in the recomputation under Rule 50. Third Issue Findings of Fact On his original return filed in his own name for 1941, petitioner claimed a deduction of $560.04 for automobile expenses which, as shown on a schedule attached to the return, was reported as representing 43 per cent of his total automobile expense amounting to $1,302.42, *36 such percentage being arrived at on the basis of "11,390 miles driven for business during 1941." Respondent disallowed that claimed deduction on the ground that petitioner was reimbursed for his automobile expenses. As above stated, petitioner was employed on the basis of a salary plus all expenses incurred by him in the Baker-Lockwood's business, including those of the operation and use of petitioner's car, except that it was understood that petitioner would pay his own automobile expense in driving in the Kansas City area. The petitioner did not maintain any accurate records of his business expenses or automobile expenses, but submitted weekly expense reports, or vouchers, to Baker-Lockwood which always honored and paid the expense accounts he rendered. The petitioner did note the mileage on his car at the beginning and end of the year 1941 and then approximated his mileage and the cost thereof attributable to driving around the Kansas City area on Baker-Lockwood business to arrive at the amount of $560.04 claimed as a deduction. During each month of 1941 Baker-Lockwood made various payments to petitioner on his expense vouchers, which payments totaled $3,616.09 in that year, *37 and included therein were various automobile expenses for each month, except January, which automobile expenses amounted to a total of $742.84 for 1941 based on a reported 18,491 miles driven in that year. Except as to the schedule filed in connection with the claimed $560.04 automobile expense deduction, the petitioner's 1941 return made no report of business expenses incurred and the amounts received as reimbursement therefor. Opinion On the third issue, the petitioner has failed to prove that he incurred automobile expenses in the amount of $560.04, or in any other amount, in connection with transacting business solely in the Kansas City area for Baker-Lockwood during 1941 in addition to the expenses for which he was reimbursed by Baker-Lockwood. On his return for 1941 he did not report the amount received in that year from Baker-Lockwood for expenses and did not claim a deduction for expenses actually incurred for that company other than this item of $560.04 in question. The amount of the claimed deduction is a mere estimate and the testimony does not substantiate the amount claimed, or any other amount. The respondent did not err in disallowing the claimed automobile *38 expense deduction of $560.04 for the year 1941. Four Issue Findings of Fact The income tax return filed by petitioner in the name of Murray Bailey for the year 1941 and the original income tax return filed by petitioner in his own proper name for the year 1941 were prepared by petitioner without assistance or advice, but he examined and used the set of "General Instructions" attached to the 1941 return Form 1040 and each of those returns was known by him to be false. Those returns were false and fraudulent and were made and filed by petitioner with the intent to evade tax. Opinion On this issue it is clear the petitioner knew that his above-mentioned returns for 1941 were false, for he so testified, and it is established beyond doubt by the facts herein bearing on this issue and his deliberate division of his 1941 income and the claiming of two exemptions, that those returns were made and filed with the intent to evade tax. The respondent did not err in asserting the 50 per cent fraud penalty against petitioner for the year 1941. Fifth Issue Findings of Fact On his tax return for 1942 petitioner included in gross income an amount of $1,365 reported as "Expenses from *39 Jackson Tube Co.". In his determination respondent included in income an additional $50 as compensation received from that company. During 1942 petitioner had an understanding with the Jackson Tube Company that it would compensate him for any business he procured for it from other contractors and that company did compensate petitioner for business obtained mainly from Baker-Lockwood. During 1942 the Jackson Tube Company paid petitioner a total of $1,415 as such compensation which was $50 more than he reported on his 1942 tax return. Opinion This issue is determined by our above findings which sustain the respondent with respect thereto. Sixth Issue Findings of Fact In his determination for 1942 respondent increased petitioner's reported gross income by the amount of $1,656.64 as additional unreported compensation received from the Ohio Tubular Products Company (hereinafter referred to as Ohio Tubular). On his tax return for 1942 petitioner did not report as gross income any amount as having been received in that year from Ohio Tubular, but he did attach to that return a memorandum stating that he had received "between $1600 and $1700" from that company which "was not *40 salary or income but simply money to reimburse me for personal funds I had expended in 1941 for them." The amount actually received by petitioner from that company in 1942 was $1,656.64. In 1941 the petitioner formed a business acquaintance with H. A. Tyson, president of Ohio Tubular, which was engaged in the business of manufacturing steel and aluminum tubing and which was interested in securing contracts for metal products in connection with the expansion program of the Army Air Force at Wright Field, including the frame work of the portable maintenance shelters in which petitioner was interested on behalf of Baker-Lockwood Petitioner thought he had an arrangement with Tyson for reimbursement of expenses incurred by him in securing business for Ohio Tubular, but the latter was not aware of any such arrangement. However, petitioner was instrumental in procuring contracts for Ohio Tubular. The petitioner and an engineer of Ohio Tubular attended the Army maneuvers in Louisiana in the summer of 1941 to demonstrate and observe the use of portable maintenance shelters and while there petitioner incurred expenses for hotel bills and also spent considerable money for parties and entertainment *41 of Army officers, most of which expenses he considered as in the interest of Ohio Tubular. At other times he incurred other expenses which he considered as on behalf of that company. From time to time petitioner entered on a small card various amounts he thought were chargeable to Ohio Tubular and when the card was filled with notations he carried the total to a new card and threw the old one away. During that time in 1941 petitioner was rendering expense accounts to Baker-Lockwood, but rendered no expense accounts to Ohio Tubular. In the first part of 1942 the petitioner sought payment of funds to him by Tyson and the latter requested that petitioner submit vouchers, whereupon petitioner sat down in Tyson's office and wrote up an expense account showing detailed items for various specific dates during the months of September, October, November 1941, and January and April 1942 which totaled $1,656.64, and such amount was paid him by Ohio Tubular in April or May 1942 because its president Tyson regarded such amount as reasonable for the services rendered by petitioner. The itemized expense accounts of petitioner which were paid by Baker-Lockwood show hotel and other expenses incurred *42 in certain cities, as for instance, Dayton, Ohio, on certain dates, and the itemized expense account petitioner submitted to Ohio Tubular showed, in several instances, hotel and other expenses on the same dates but in different cities as widely separated from Dayton, Ohio as Dallas, Texas or Jackson, Mississippi. The amount of $1,656.64 paid by Ohio Tubular to petitioner in 1942 constituted taxable income to him for that year. Opinion On the sixth issue our findings of fact sustain the respondent's action in increasing petitioner's gross income for 1942 by the amount of $1,656.64 received by petitioner in that year from Ohio Tubular. The facts show that petitioner rendered some services to and was instrumental in procuring contracts for that company. They further show, in our opinion, that the amount was paid to petitioner as reasonable compensation for services rendered by him to Ohio Tubular. Petitioner contends that such amount was merely a reimbursement for expenses incurred on behalf of that company. Petitioner has failed to prove the amount of any expenses incurred on behalf of that company and consequently no amount is allowable herein as an offsetting deduction against *43 the $1,656.64. The petitioner kept no accurate record of any expenses he may have incurred purely on behalf of Ohio Tubular as distinguished from Baker-Lockwood by whom he was regularly employed at the same time and from whom he received payment for expenses incurred for travel, hotel, entertainment, etc. Furthermore, the so-called expense voucher he submitted to H. A. Tyson, president of Ohio Tubular, as a basis for the payment of $1,656.64 was apparently prepared on the spur of the moment in Tyson's office in or about April 1942 without any supporting memoranda and various items thereon are in direct conflict with his weekly expense accounts submitted to Baker-Lockwood. On this issue we find no error in respondent's determination. Seventh Issue Findings of Fact For the taxable year 1942 the respondent determined that petitioner received from Ohio Tubular through its president, H. A. Tyson, the amount of $575 as additional compensation, which was omitted from petitioner's tax return for that year. Respondent now concedes error as to $75 of such amount. As stated in the above findings on the sixth issue, petitioner had a friendly business relationship with Tyson, president *44 of Ohio Tubular, and was instrumental in procuring contracts for that company, but had no definite arrangement for the payment of compensation for such services because the Army's Auditing Section disfavored the payment of commissions for the procurement of contracts. On April 30, 1942, Ohio Tubular was awarded a contract to manufacture metal frames for airplane shelters and petitioner was instrumental in its getting such contract. In the afternoon of the same day Tyson visited petitioner's hotel room and joined in an informal party of drinking and shooting dice. During that afternoon Tyson gave his personal check for $600 to petitioner who gave Tyson $100 in cash, the difference of $500 representing a payment by Tyson on behalf of Ohio Tubular in appreciation for petitioner's assistance in procuring the contract just awarded that company. The amount of $500 was paid to petitioner in 1942 by H. A. Tyson, president of Ohio Tubular, and on behalf of that company as compensation for services rendered the company. Opinion On the seventh issue the facts clearly support the finding that the $500 paid to petitioner in 1942 by H. A. Tyson was for services rendered by petitioner and *45 accordingly constituted income. On this issue we find no error in respondent's determination. Ninth Issue Findings of Fact In his determination for the year 1942 respondent disallowed $1,598.36 of the amount claimed by petitioner as a deduction for business expenses for that year. In his return for 1942 petitioner reported the amount of $36,319.13 as income from salaries and other compensation and attached a supporting schedule as follows: Details of Income and Expenses in 1942
Salary from Baker Lockwood Mfg.
Co., Inc.
$27,700.00
Salary from Universal Bldg. Prod.
Corp.
7,150.00
Expenses from Universal Building
Prod. Corp.
2,383.70
Expenses from Jackson Tube Co.
1,365.00
$38,598.70
Expenses: Paid Ira B. Burns on Attorneys fee
to adjust contracts with Univer-
sal Bldg. Prod. Corp. and Baker-
Lockwood Mfg. Co., Inc.
$ 681.21
Travel
292.87
Hotel
366.35
Entertainment
687.55
Misc.
251.59
Total Expense
$ 2,279.57
TOTAL INCOME
$38,598.70
TOTAL EXPENSES
2,279.57
NET INCOME
$36,319.13
The petitioner's return did not state for which company he incurred the last four items of expense listed above which totaled $1,598.36 and which *46 are the claimed business expenses disallowed by respondent because the petitioner had no records available to substantiate such expenses. During 1942 petitioner was an employee of Baker-Lockwood on the basis of a salary plus expenses actually incurred and for which he submitted weckly vouchers. During each month of 1942 petitioner received various payments, totaling $13,043.97 for the year, and representing his total expense account for that year paid by Baker-Lockwood. On his 1942 return he did not report any amount received from Baker-Lockwood as reimbursement for expenses incurred in connection with its business. During 1942 petitioner also performed part-time services for Universal, on the basis of a salary plus $250 per month for expenses and he received a total of $2,383.70 from that company during 1942 as an allowance for expenses. Petitioner did not submit regular expense vouchers to Universal at any time during 1942, but would merely say he had expenses of $250 or some such amount for a certain month. Opinion The ninth issue involves respondent's disallowance of a claimed deduction for 1942 of an amount of $1,598.36 for expenses listed as travel, hotel, entertainment, *47 and miscellaneous. The petitioner's return did not identify what company he incurred the expenses for and when the items were questioned by respondent petitioner had no records available to substantiate such claimed expenses. Petitioner contends that those expenses were incurred on behalf of Universal and for the purpose of substantiating the amount claimed he submitted in evidence a series of small calendar note books, one for each month, purporting to show amounts paid on certain days for various things such as travel, hotel, dinner parties, week-end parties, holidays guests, football and baseball games, candy, cigars, flowers, theatre parties, Christmas cards, miscellaneous, etc. However, the note books are not fully explained by his testimony and, even if the entries were made contemporaneously with the purported expenditures, there is no proof that the expenditures were purely business as distinguished from personal expenses, or, that they were all incurred for Universal as distinguished from Baker-Lockwood by whom he was regularly employed during 1942, and from whom he received payment for similar expenses incurred. Furthermore, petitioner testified that his arrangement with *48 Universal was its payment of a salary plus $250 a month for expenses and that he did not submit regular expense vouchers, but would merely state to the company that he had expended a certain total amount for a particular month. Petitioner has failed to prove that he incurred actual business expenses in the amount of $1,598.36, or any other definite amount, in connection with his part-time employment by Universal. On this issue we find no error in respondent's determination. Tenth Issue Findings of Fact In making and filing his income tax return for 1942 the petitioner omitted reporting as taxable income the item of $1,656.64 received by him from Ohio Tubular and the item of $4,647.62 received by him from Baker-Lockwood under the name of Murray Bailey, but with reference to those items he did attach to his return a memorandum which stated: "Baker-Lockwood Mfg. Company, Inc., of Kansas City, Missouri, in its information report of incomes for the year 1942, has stated that my salary, wages, fees, and commissions were $34,847.62. This is an error. $7,147.62 was money which was advanced to me and which I am repaying to Baker-Lockwood. It was not a salary or income of any kind, but *49 a simple loan. "I received during 1942 between $1,600 and $1,700 from Ohio Tubular Products Co. to reimburse me for moneys spent in their behalf during 1941. It was not salary or income but simply money to reimburse me for personal funds I had expended in 1941 for them." Petitioner also omitted reporting the item of $500 received from Ohio Tubular through its president. He also claimed a deduction of $1,598.36 for certain expenses as set out in a schedule attached to his return. Opinion On the tenth issue, involving respondent's determination of a 50 per cent fraud penalty for the year 1942, we are of the opinion that respondent has failed to carry his burden of proof. In making and filing his 1942 return petitioner omitted certain items which we have found to be income, but in attaching to his return the memorandum set out in our findings of fact he made an effort to explain his omissions, except for one item of $500. In making that return petitioner claimed an expense deduction of $1,598.36 and we have approved respondent's disallowance of this deduction because of failure of proof. All these items were here in dispute, requiring our decision thereon, and we cannot conclude *50 from the facts of record that the omission of these items from petitioner's return and the claiming of the expense deduction for 1942 were with fraudulent intent to evade tax. Neither can we find from such facts any such negligence or intentional disregard of rules and regulations as would support respondent's alternative plea for assertion of a negligence penalty. On this issue respondent erred. Decision will be entered under Rule 50.